[No. B227849. Second Dist., Div. Three. Feb. 28, 2012.]

In re CHEYENNE B., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
RICHARD B., Defendant and Appellant;
DENNIS M., Defendant and Respondent.

**1364**

COUNSEL

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Respondent.

Jack A. Love, under appointment by the Court of Appeal, for Minor.

---

OPINION

**CROSKEY, Acting P. J.—**

## INTRODUCTION

The appellant, Richard B. (Richard),[1] challenges the trial court's order of August 24, 2010, which (1) denied his request to be recognized as the presumed father[2] of Cheyenne B. (Cheyenne) and (2) found that Dennis M. (Dennis) was her presumed father.[3] The findings of that order formed the basis for the September 29, 2010 judgment declaring Cheyenne and D.H.[4] (D.H.) to be dependents of the court and permanently placing them with Dennis. Richard asserts that his August 20, 2009 judgment regarding parental obligations is a judgment establishing his paternity with respect to Cheyenne

---

[1] Throughout this opinion, we refer to various parties by their first names as a matter of simplicity and clarity. No undue familiarity is intended.

[2] " 'Presumed fatherhood, for purposes of dependency proceedings, denotes one who "promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise[.]" ' [Citation.] . . . [¶] . . . [¶] Presumed fathers are accorded greater rights than are mere natural fathers. [Citation.] For example, section 361.5, subdivision (a) of the Welfare and Institutions Code provides that except in circumstances not relevant here, 'whenever a child is removed from a parent's or guardian's custody, the juvenile court *shall* order the social worker to provide child welfare services to the child and the child's mother and *statutorily presumed father* or guardians.' " (*In re A.A.* (2003) 114 Cal.App.4th 771, 779–780 [7 Cal.Rptr.3d 755].)

[3] Cheyenne was born in July 1997.

[4] D.H. was born in May 2000.

and, therefore, the Family Code[5] section 7611, subdivision (d)[6] presumption that Dennis is Cheyenne's presumed father is rebutted pursuant to section 7612, subdivision (c).[7] He also asserts that the trial court was required to give

[5] Unless otherwise stated herein, all statutory references are to the Family Code.

[6] Section 7611 states, "A man is presumed to be the natural father of a child if he meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions: [¶] (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court[;] [¶] (b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] (1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce[;] [or] [¶] (2) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation[;] [¶] (c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] (1) With his consent, he is named as the child's father on the child's birth certificate[;] [or] [¶] (2) He is obligated to support the child under a written voluntary promise or by court order[;] [¶] (d) *He receives the child into his home and openly holds out the child as his natural child*[;] [¶] (e) If the child was born and resides in a nation with which the United States engages in an Orderly Departure Program or successor program, he acknowledges that he is the child's father in a declaration under penalty of perjury, as specified in Section 2015.5 of the Code of Civil Procedure. [(]This subdivision shall remain in effect only until January 1, 1997, and on that date shall become inoperative[)];] [¶] [or] (f) The child is in utero after the death of the decedent and the conditions set forth in Section 249.5 of the Probate Code are satisfied." (Italics added.)

[7] Section 7612 states, "(a) Except as provided in Chapter 1 (commencing with Section 7540) and Chapter 3 (commencing with Section 7570) of Part 2 or in Section 20102, a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. [¶] (b) If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. [¶] (c) *The presumption under Section 7611 is rebutted by a judgment establishing paternity of the child by another man.* [¶] (d) Within two years of the execution of a voluntary declaration of paternity, a person who is presumed to be a parent under Section 7611 may file a petition pursuant to Section 7630 to set aside a voluntary declaration of paternity. The court's ruling on the petition to set aside the voluntary declaration of paternity shall be made taking into account the validity of the voluntary declaration of paternity, and the best interests of the child based upon the court's consideration of the factors set forth in subdivision (b) of Section 7575, as well as the best interests of the child based upon the nature, duration, and quality of the petitioning party's relationship with the child and the benefit or detriment to the child of continuing that relationship. In the event of any conflict between the presumption under Section 7611 and the voluntary declaration of paternity, the weightier considerations of policy and logic shall control. [¶] (e) A voluntary declaration of paternity is invalid if, at the time the declaration was signed, any of the following conditions exist: [¶] (1) The child already had a presumed parent under Section 7540[; ¶] (2) The child already had a presumed parent under subdivision (a), (b), or (c) of Section 7611[;] [or] [¶] (3) The man signing the declaration is a

effect to the previous judicial determination regarding his paternity because, under section 7636,[8] such an adjudication establishes that he is her father "for all purposes," including a finding that he is Cheyenne's presumed father, and the trial court was without authority to make a paternity determination with respect to Dennis as a result.

In addition, Richard contends, notwithstanding the foregoing, that there was substantial evidence to support a finding that he is Cheyenne's presumed father under section 7611, subdivision (d). And, he argues, the trial court erred in finding otherwise. Similarly, Richard contends that the trial court's finding that Dennis is Cheyenne's presumed father under section 7611, subdivision (d), was not based on substantial evidence.

After a careful review of the relevant authorities, we hold that a paternity judgment establishing that a man is the father of a child for *child support purposes* is nonetheless a "paternity judgment" within the meaning of section 7612, subdivision (c), and that such judgment will rebut the section 7611, subdivision (d) presumption. However, the rebuttal of the section 7611, subdivision (d) presumption does not require a trial court to find that a man with a prior paternity judgment shall be designated as a presumed father of the child at issue; in order for such a designation to be made, the requirements of one of the categories of section 7611 must be satisfied (see fn. 6, *ante*). Falling within section 7612, subdivision (c), is *not* one of those categories. Similarly, section 7636 does not require that a trial court find a man to be a presumed father solely on the basis of having a prior paternity judgment.

Finally, we conclude that the evidence in the record before us supports the trial court's finding that Richard, despite such prior paternity judgment, does not satisfy any of the categories set out in section 7611 in order for him to be given presumed father status with respect to Cheyenne. As such, the trial court's ruling that he is not her presumed father was not erroneous.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *The Facts*

On or around May 13, 2010, the Los Angeles County Department of Children and Family Services (DCFS) received a referral stating that Summer P.

---

sperm donor, consistent with subdivision (b) of Section 7613." (Italics added.) Subdivisions (d) and (e) were added by amendment in 2011, effective January 1, 2012. (Assem. Bill No. 1349 (2011–2012 Reg. Sess.) § 3.)

[8] Section 7636 states, "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code."

(Summer) took her daughter, Cheyenne, then 12 years old, to the house of another minor child and encouraged Cheyenne to get into an altercation with the other child. The referral alleged that Summer and Cheyenne assaulted the other child. The police became involved and Summer was arrested for child endangerment, assault with a deadly weapon and terrorist threats. DCFS detained all five of Summer's children: Cheyenne, Dennis M.[9] (born in June 2001), twins W.M. and S.M. (born in Mar. 2004) and D.H.

Minor child Dennis, and his twin sisters, W.M. and S.M., were all placed with their biological father, Dennis, in Nevada before DCFS filed its dependency petition. Richard was identified by Summer as the biological father of Cheyenne, and W.H. was identified as the biological father of D.H. Summer initially stated Richard's whereabouts were unknown to her and W.H. was incarcerated in a federal penitentiary. Both Cheyenne and D.H. were placed in foster care.

### 2. *The Proceedings*

The parties to this appeal include Richard, DCFS, Cheyenne and Dennis.[10] Summer, D.H. and W.H., although parties to the dependency case below, are not parties to this appeal. Cheyenne's other half siblings were not parties to the dependency case below.

At the detention hearing on May 18, 2010[11] (continued to May 20, 2010, to allow Summer to attend), Dennis was in attendance, was appointed an attorney and asked for presumed father status and custody of both Cheyenne

---

[9] Although this minor child bears the same name, our reference in this opinion to "Dennis" is only to the father.

[10] Dennis chose not to file any responsive briefs in this action and instead submitted on the issues based on the briefs filed by Richard and DCFS. Additionally, we have taken judicial notice of the appeal in case No. B234964 (*In re Cheyenne B.*). In that case, Dennis separately appeals the trial court's denial of his Welfare and Institutions Code section 388 petition, which sought to set aside the previous ruling that found him to be Cheyenne's presumed father. Because our holding here affects the result of that appeal, the briefing schedule for that appeal was vacated pending our decision in this matter. In his section 388 petition, Dennis states that Cheyenne no longer lives with him and that he does not know where she is. However, at oral argument, Cheyenne's counsel stated that Cheyenne now lives with Summer.

[11] The trial court stated at the hearing on May 20, 2010, that the detention report dated May 18, 2010, is "not evidence before me. I'm not giving it any weight." However, the May 18, 2010 minute order states that the trial court "read and considered the DCFS report dated: 05/18/10," and the August 24, 2010 minute order states that the "5-18-10 DET. RPT." was admitted into evidence. Both of these statements contradict the trial court's prior oral statement. We will treat that detention report as having been introduced into evidence. A trial court's written statements of decision cannot be impeached by oral expressions of the trial court to the contrary. (*Raville v. Singh* (1994) 25 Cal.App.4th 1127, 1132 [31 Cal.Rptr.2d 58]; *Chapple v. Big Bear Super Market No. 3* (1980) 108 Cal.App.3d 867, 875 [167 Cal.Rptr. 103].)

and D.H. The trial court found Dennis had these children "in his care and custody for a substantial period of time . . . [and assumed] that he was providing support to those children, not only financially but emotionally and physically . . . he accepts them as his own, and these children recognize him as their father." The court also stated, "I've seen the interaction between those children and this father. [¶] I don't know what [Richard and W.H. who] have been found to be the alleged fathers[12] can provide to this court that would be different. Neither one of them are [sic] in the position to take these children." The court stated that Cheyenne was 12 years old and Richard had not previously asserted any paternity rights. The court then found Dennis to be Cheyenne's presumed father and released her to him, allowing him to take the children to Nevada, over DCFS's objections. DCFS's request for a stay of the release order was denied.

The trial court held a paternity hearing on August 24, 2010. Richard was in attendance and was appointed an attorney. Richard moved the court to set aside its finding that Dennis was Cheyenne's presumed father and to name Richard as her presumed father instead.[13] At the hearing, Richard testified that Cheyenne was his daughter but that he was not present at her birth due to his being incarcerated. He testified further that he first saw her when Summer brought Cheyenne to the prison less than a month after her birth. Additionally, he testified that he called, wrote letters and sent money from prison.

On the day he was released from prison in July of 2006, he visited with Cheyenne, who was then approximately nine years old, and was living in Nevada. He also saw her again one or two months later. Richard stated that because he was on parole he could not leave California and, as a result, he was only able to visit Cheyenne when Summer came to California. He did not indicate the frequency of these visits. Richard submitted contradictory testimony with respect to how many overnight visits he had had with Cheyenne stating first, "She stayed at my house—not very often, but she's been to my house maybe three or four times for a few days at a time." But then when counsel clarified whether such visits were monthly or every two months, Richard stated, "Oh, no. It was—it was when she first moved back to

---

[12] Summer submitted an unsigned paternity questionnaire which stated that she believed Richard to be Cheyenne's biological father, that Richard and she were not married, that he did not sign papers at the hospital, that he never held himself out as the father of Cheyenne, that there was possibly a paternity test conducted in the past, and that there was a Los Angeles County Child Support Services Department order for child support against him. On the basis of this questionnaire, the court found Richard to be the alleged father of Cheyenne.

[13] The record reflects that on March 4, 2009, the County of Los Angeles had filed a complaint against Richard seeking a determination of paternity and an order for child support. Richard did not oppose this complaint and a judgment establishing paternity was entered on August 20, 2009. Although the effect of this judgment is a major issue in this appeal, it was not argued below nor did the trial court apparently give any consideration to it in its ultimate ruling.

California. I had her on through the weekend, the first weekend. I can tell you it was right around her birthday. I had her for about a week right before her birthday. Then she went back to her mother's."

Richard stated to DCFS that he was unable to see Cheyenne as consistently as he would have liked because Summer kept her from him. Richard testified that Summer informed him that she stopped bringing Cheyenne to see him when he was incarcerated because she did not want Cheyenne to be at the prison. He testified that Summer subsequently ceased bringing Cheyenne to see him and would not allow other family members to do so. He also testified that after his parole ended his infrequent visitation with Cheyenne was due to a "lack of communication" between Summer and him. Summer did not give Richard her address and when he called, Summer often would hang up and not let him speak to Cheyenne.

He testified that he began visiting Cheyenne more often when Summer returned to California. He paid $31 a month in court-ordered child support from September of 2009 through the time (May 2010) when Cheyenne was detained by DCFS. He also claims to have wired $100 to $200 to Summer in 2006, 2007, 2008 and 2009. However, he produced no corroborating evidence of these wire transfers. Richard also testified that he is a truck driver and would meet Cheyenne for short visits at Wal-Mart when he drove through the town where she lived. The last time he saw her was about a year prior to the hearing.

Finally, Richard testified that when Cheyenne was born, he received papers to sign, which he did and returned, acknowledging that she was his daughter, but he was unable to remember who sent the papers and did not indicate that his signature thereon was notarized or that Summer cosigned such papers. He stated he believed his name was on Cheyenne's birth certificate, but he has never seen it. Richard did not produce copies of any of these papers or Cheyenne's birth certificate. The trial court did not order DCFS to produce and DCFS did not produce a copy of Cheyenne's birth certificate.

At the paternity hearing, DCFS submitted a last minute information report to the court in which it noted that Dennis stated at a team decisionmaking meeting that he was willing and able to provide for Cheyenne and D.H. so they could remain together with his biological children, but that "he was not insisting [they] were his own or that he had full legal responsibility to provide for them . . . ." However, Cheyenne specifically stated that she wanted to live with Dennis but wanted to continue her visits with Richard.

The trial court found that the evidence produced was insufficient to establish that Richard was Cheyenne's presumed father. Specifically, the court found that Richard "indicated that the child hasn't been in his home[,] . . . that when he came through town he would meet up with [Summer] at Wal-Mart to see his daughter" and that such actions were not consistent visitation sufficient to establish by a preponderance of the evidence that Richard received Cheyenne into his home as required under section 7611, subdivision (d). The trial court did not analyze the issue of whether Richard openly held Cheyenne out as his natural child; however, there is no dispute as to whether he did so. The trial court denied Richard's motion on the basis that Richard had not received Cheyenne into his home.

At the hearing on August 24, 2010, the trial court sustained the Welfare and Institutions Code section 300 petition, denied Richard's motion to be found Cheyenne's presumed father and instead found Dennis to be Cheyenne's presumed father. On September 29, 2010, the trial court entered judgment declaring Cheyenne and D.H. to be dependents of the court and ordered (1) joint legal custody of both minors to Summer and Dennis; (2) sole physical custody of both minors to Dennis; and (3) termination of dependency jurisdiction with the custody orders to be filed in family law court. (See Welf. & Inst. Code, § 362.4.) Richard has filed a timely notice of appeal seeking review of the trial court's findings that Dennis is Cheyenne's presumed father and that Richard is not.

## CONTENTIONS

Richard contends that the trial court erred as a matter of law in denying his motion seeking status as Cheyenne's presumed father. In support of his contention, Richard argues that a previous judicial determination finding Richard to be Cheyenne's father for purposes of child support obligations rebutted the section 7611, subdivision (d), presumption that Dennis is Cheyenne's father pursuant to section 7612, subdivision (c), and, as a result, Dennis could not be found to be Cheyenne's presumed father.[14]

---

[14] Richard also argues that he should be found to be Cheyenne's presumed father because he executed a voluntary declaration of paternity under section 7571. Section 7611 provides that a man who executed a voluntary declaration of paternity is a presumed father. Richard's argument is without merit as the only evidence of his having executed such a declaration is his testimony that he received papers to sign, which he did and returned, acknowledging that Cheyenne was his daughter. But he was unable to remember who sent the papers and did not indicate that his signature thereon was notarized or that Summer cosigned such papers. He also stated that he believed his name was on Cheyenne's birth certificate, but he has never seen it. Richard did not produce copies of any of these papers or Cheyenne's birth certificate. Therefore, the evidence in the record supports the trial court's finding that Richard's testimony and lack of evidence were insufficient to show that he executed a voluntary declaration of paternity or that his name was on Cheyenne's birth certificate.

Richard also argues that the dependency court was required to give effect to the previous judicial determination of his paternity because, under section 7636, such an adjudication establishes that he is her father "for all purposes," including a finding that he is Cheyenne's presumed father and as a result, the dependency court was without authority to make a paternity determination in favor of Dennis.

Richard next contends, notwithstanding the foregoing, that there was substantial evidence to find that he is Cheyenne's presumed father under section 7611, subdivision (d), and, he argues, the trial court erred in finding otherwise. Similarly, Richard contends that the trial court's finding that Dennis is Cheyenne's presumed father under section 7611, subdivision (d), was not based on substantial evidence.

## DISCUSSION

### 1. Standard of Review

As Richard's first contention on appeal involves the interpretation and application of sections 7612 and 7636, our review is de novo. (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989 [69 Cal.Rptr.3d 167].)

With respect to Richard's section 7611, subdivision (d) contention, our review of the trial court's findings is limited to considering whether substantial evidence supports such findings. (*S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023, 1031 [134 Cal.Rptr.3d 1].) "When considering a claim of insufficient evidence on appeal, we do not reweigh the evidence, but rather determine whether, after resolving all conflicts favorably to the prevailing party, and according the prevailing party the benefit of all reasonable inferences, there is substantial evidence to support the judgment." (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [46 Cal.Rptr.2d 427, 904 P.2d 834].) " 'It is an elementary . . . principal of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact].' [Citation.]" (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 207 [48 Cal.Rptr.2d 448].)

### 2. Neither Section 7612, Subdivision (c), nor Section 7636 Requires That a Prior Paternity Judgment Must Result in a Finding of "Presumed Father" Under Section 7611, Subdivision (d)

Richard contends that the trial court erred as a matter of law in denying his motion seeking status as Cheyenne's presumed father based on the following two arguments: (1) a previous judicial determination finding Richard to be Cheyenne's father for purposes of child support obligations, pursuant to section 7612, subdivision (c), rebutted the section 7611, subdivision (d), presumption that Dennis was Cheyenne's father, and, therefore, the trial court was required to find that Richard is Cheyenne's presumed father; and (2) the trial court was required to give effect to the previous judicial determination of his paternity because, under section 7636, such an adjudication established that he was her father "for all purposes," and the dependency court was thus without authority to make a paternity determination with respect to Dennis.

#### a. Section 7612, Subdivision (c)

Richard contends that the trial court erred as a matter of law because his August 20, 2009 judgment regarding parental obligations is a judgment establishing his paternity with respect to Cheyenne and, therefore, the presumption that Dennis is Cheyenne's presumed father was rebutted. As a result, Richard contends that he should have been found to be Cheyenne's presumed father.

■ Section 7611 provides that a "man is presumed to be the natural father of a child if . . . [¶] . . . [¶] (d) He receives the child into his home and openly holds out the child as his natural child." Section 7612, subdivision (c), provides, however, that such presumption "is rebutted by a judgment establishing paternity of the child by another man." The trial court was provided with a 2009 judgment regarding parental obligations in support of his contention. In this document, the court orders that Richard and Summer "are the parents of" Cheyenne. None of the parties disputes the existence of this order nor do they dispute that the order is a judgment. The question before us is what effect must we give such judgment.[15]

---

[15] DCFS appeared in this proceeding and opposed Richard's argument that, under section 7612, subdivision (c), a paternity judgment not only *rebuts* the presumptions in section 7611, but also *requires* a court to find that the holder of such paternity judgment is a presumed father. DCFS disputed this contention, arguing that a " 'judgment establishing paternity' as used in section 7612, subdivision (c), must be one that establishes the man as a presumed father or the equivalent of a presumed father as that term has been defined and used for dependency purposes. When faced with a presumed father and a judgment establishing paternity of the child by another man based upon evidence that would qualify the man as a presumed father, the juvenile court should conduct a hearing to determine which paternity interest was founded

There are several cases touching on this issue. In *In re P.A.* (2011) 198 Cal.App.4th 974 [130 Cal.Rptr.3d 556], the issue presented implicated the rights of a presumed father and a biological father, and whether the court could use *evidence* (as opposed to a "judgment") of biological paternity in order to enter " 'a judgment establishing paternity' under section 7612, subdivision (c), for the purpose of rebutting the presumption of paternity under section 7611, subdivision (d), without weighing the competing interests of a statutorily presumed father." (*In re P.A., supra,* 198 Cal.App.4th at p. 979.) The *In re P.A.* court held that because the child at issue already had a presumed father and there was no *preexisting judgment* establishing paternity based on the biological evidence of such paternity, the lower court was required to first make "factual findings and [apply] a balancing test to reconcile the competing paternity interests . . . ." (*Id.,* at p. 981.)

The *In re P.A.* court emphasized that a genetic connection between a biological father and a child did not automatically rebut a presumed father's status. (*In re P.A., supra,* 198 Cal.App.4th at p. 982.) The *In re P.A.* court goes on to clarify: "Section 7612, subdivision (c), provides that a paternity presumption under section 7611 'is rebutted by a judgment establishing paternity of the child by another man.' The plain language of that subdivision refers to a *judgment,* not merely a *finding* regarding biological tests used to determine if a man is the child's natural father. [Citation.] This distinction is critical. In enacting section 7612, subdivision (c), the Legislature established a categorical rule that allows a presumption of fatherhood to be rebutted when a judgment of paternity already exists, thereby preventing the court from determining parentage if it had previously been judicially determined. [Citations.] Stated another way, a section 7611 presumption is rebutted by a prior judgment because that 'judgment acts to preclude the issue of paternity from being *redetermined.*' [Citation.] Thus, section 7612, subdivision (c), cannot be interpreted to mean 'a determination of biological parenthood in favor of one man in a dependency case necessarily defeats another man's section 7611[] presumed father status in that same case.' [Citation.] [¶] Here, a scientific finding that Alvaro is P.A.'s biological father is not the same as a paternity judgment." (*Id.,* at p. 982, original italics.) Unlike the biological father in *In re P.A.,* who merely had *evidence* of his paternity, Richard has a *judgment* of paternity that was entered on August 20, 2009.

---

on weightier considerations of policy and logic." In view of the limited nature of the issues before us and the conclusion we reach, we have no need to reach or consider this argument by DCFS.

In *In re Levi H.* (2011) 197 Cal.App.4th 1279 [128 Cal.Rptr.3d 814] is also of interest. In that case, the trial court had found that Michael was the presumed father of the child Levi because "Levi lived with Michael beginning in June 2009, and [Michael] supported the child by providing food, clothing, diapers, gifts, medical insurance and transportation." (*In re Levi H., supra*, 197 Cal.App.4th at p. 1284.) The biological father, Andrew, asked that he be granted presumed father status on the basis that he signed and filed a voluntary declaration of paternity on the day after Levi was born in 2008. (*Id.*, at pp. 1284–1285.) The *In re Levi H.* court held that under section 7612, subdivision (c), "Andrew's voluntary declaration of paternity, which has the same force and effect as a paternity judgment (§ 7573), rebuts Michael's presumption under section 7611, subdivision (d) as a matter of law . . . ." (197 Cal.App.4th at p. 1290.)

In affirming the lower court's order, the *In re Levi H.* court stated further that it was "not Michael's lack of a biological relationship with Levi, however, that precludes him from being the presumed father. Rather, Andrew's voluntary declaration trumps presumed father status under section 7611, subdivision (d) despite any inequities. [Citation.]" (*In re Levi H., supra*, 197 Cal.App.4th at p. 1290.) Although *In re Levi H.* involved the effect of a voluntary declaration rather than a judgment, the analysis under section 7612, subdivision (c), is the same since a voluntary declaration has the same effect. The *In re Levi H.* court did not find it necessary to engage in an analysis of whether the voluntary declaration includes evidence that would qualify the man as a presumed father.[16]

In *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119 [95 Cal.Rptr.3d 477] (*Kevin Q.*),[17] Kevin petitioned the trial court "to establish a parental relationship as the child's presumed father, seeking legal and physical custody of,

---

[16] As the *In re Levi H.* court explained, "The difference between a judgment of paternity arising from a voluntary declaration of paternity and a judgment of paternity not arising from such a declaration is that section 7611 expressly recognizes the former type as establishing presumed fatherhood. Section 7611 states a 'man is presumed to be the natural father of a child if he meets the conditions provided in . . . Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions . . . .' " (*In re Levi H., supra*, 197 Cal.App.4th at p. 1290.)

[17] We note in passing that, in August of 2011, the Legislature enacted and the Governor signed Assembly Bill No. 1349 (2011–2012 Reg. Sess.) which added two new provisions to section 7612 (subds. (d) and (e)) in response to *Kevin Q.* (Assem. Bill No. 1349 (2011–2012 Reg. Sess.) § 3.) The Senate Judiciary Committee stated in the portion of its bill analysis discussing section 7612, subdivision (d): "In [*Kevin Q.*], the court found that an absentee father, who would not be paying child support, was, by law, the child's father rather than finding the man who raised the child and provided financial support for the child to be the legal father. This decision was based solely on the voluntary declaration of paternity being signed by the biological father and mother. [¶] This bill would abrogate the court's ruling in [*Kevin Q.*] by allowing a presumed parent to request that a voluntary declaration of paternity be set aside within two years of its execution. This bill would allow the court to exercise its

and reasonable visitation with, the child." (*Kevin Q., supra*, 175 Cal.App.4th at p. 1125.) At an ex parte hearing, the trial court "found Kevin had 'made a prima facie showing that he is a presumptive father of [the child],' and granted him visitation . . ." and set a hearing on Kevin's order to show cause for July of 2007. (*Id.*, at p. 1127.) In her April 30, 2007 response to the petition, the mother attached a copy of a voluntary declaration of paternity (dated Apr. 25, 2007) which was signed and dated by another man, Brent.[18] (175 Cal.App.4th at p. 1128.) Although the trial court found that both Kevin and Brent had met the requirements under section 7611 for presumed father status, it concluded that Kevin should be designated as the presumed father based on the court's balancing analysis under section 7612, subdivision (b). In its opinion, the *Kevin Q.* court reversed. (*Kevin Q., supra*, 175 Cal.App.4th at pp. 1134–1135.) It stated: "[W]e must ' "begin with the fundamental rule that our primary task in construing a statute is to determine the Legislature's intent." [Citation.] We must begin with the words of the statute.' [Citation.] The language of section 7573 is clear: A voluntary declaration of paternity, duly completed and filed after 1996, has 'the same force and effect as a judgment for paternity . . . .' Equally clear is the language of section 7612, subdivision (c): A section 7611 presumption 'is rebutted by a judgment establishing paternity of the child by another man.' And section 7612, subdivision (a), listing the section 7611 presumptions that are rebuttable, expressly *excludes* presumed father status arising from a declaration of paternity as one of the rebuttable presumptions. . . . [¶] . . . No statute grants a court the discretion to ignore, or treat as a rebuttable presumption, a voluntary declaration of paternity accorded the force of a judgment under section 7573. It is a 'cardinal rule that courts may not add provisions to a statute.' [Citation.]" (*Kevin Q., supra*, 175 Cal.App.4th at pp. 1137–1138, fn. omitted.)

discretion when deciding whether or not to set aside the voluntary declaration of paternity by determining the best interests of the child as well as other specified factors." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1349 (2011–2012 Reg. Sess.) as amended Apr. 14, 2011, p. G, fn. omitted.)

The language in new subdivision (e) of section 7612 also established that a voluntary declaration of paternity would be invalid if, at the time the declaration was signed, the child already had a presumed parent under section 7540 (child of a wife cohabitating with her husband), the child already had a presumed parent under subdivisions (a), (b) or (c) of section 7611 (but notably not (d)) or the man signing the voluntary declaration was a sperm donor.

At oral argument, it was contended that, as a result of Assembly Bill No. 1349 (2011–2012 Reg. Sess.), *Kevin Q.* was no longer good law. We disagree. Assembly Bill No. 1349, did not amend nor does it affect the analysis of section 7612, subdivision (c), made by the *Kevin Q.* court. It simply would have allowed Kevin to challenge Brent's voluntary declaration of paternity and potentially permitted the trial court to engage in an analysis whereby it weighed the presumption against the declaration, considering policy and logic under the circumstances.

[18] On December 4, 2007, the mother filed another copy of the voluntary declaration of paternity that was certified by the Department of Child Support Services. (*Kevin Q., supra*, 175 Cal.App.4th at p. 1129.)

■ As in *In re Levi H., Kevin Q.* involved a voluntary declaration of paternity and the court analyzed whether such declaration rebutted the section 7611, subdivision (d), presumption. Although the instant appeal does not involve a voluntary declaration of paternity, the application of section 7612, subdivision (c), is similar and its language is simple and clear. We therefore need not look further than the language itself. (See *In re M.B.* (2009) 174 Cal.App.4th 1472, 1477 [95 Cal.Rptr.3d 359].) A judgment of paternity rebuts the section 7611, subdivision (d) presumption.

■ Based on our analysis of the language in section 7612, subdivision (c), the trial court below erred as a matter of law in finding Dennis to be Cheyenne's presumed father because the section 7611, subdivision (d) presumption was rebutted by Richard's 2009 paternity judgment, which was obtained prior to the trial court's making its determination as to Dennis.[19] However, the rebuttal of the section 7611, subdivision (d) presumption in favor of Dennis does *not* mean that Richard is the presumed father of Cheyenne. " 'Presumed fatherhood, for purposes of dependency proceedings, denotes one who "promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise[.]" ' [Citation.]" (*In re A.A., supra*, 114 Cal.App.4th at p. 779.)

Nowhere in section 7611 or in the case law interpreting that section does it state that a prior paternity judgment requires a trial court to find the holder of such judgment must *thereby* be a presumed father. (*In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1296, 1298 [85 Cal.Rptr.2d 713] [stating "the presumed father finding is not the same as the paternity judgment" therefore, the appellant must still establish facts in order to be found the child's presumed father to attain full standing and status in the dependency proceeding, which he failed to do].) In our view, requiring a man who holds a judgment of paternity to also satisfy the requirements necessary to be considered a presumed father, with its attendant rights and obligations, does not constitute a redetermination of paternity. Instead, it is a determination of the extent, nature and quality of his relationship with the child at issue. We find support

---

[19] The *Kevin Q.* court stated in dicta that a man may obtain a paternity judgment, "so long as no other man has already obtained such a judgment. (§ 7612, subd. (c).) In this respect, the statutory scheme rewards the father who is the first to obtain a judgment establishing his paternal rights and responsibilities." (*Kevin Q., supra,* 175 Cal.App.4th at p. 1134, fn. 8.) This statement implies that a paternity judgment entered into after another man has been judicially determined to be the child at issue's presumed father would still rebut the presumption. As Richard's paternity judgment was obtained prior to the trial court's "presumed father" determination with respect to Dennis, this question is not before us.

for this conclusion in the fact that the Legislature did not include a judgment of paternity in the list of ways in which a man may satisfy the requirements of section 7611 even though it did include voluntary declarations of paternity, which are generally treated similarly to paternity judgments, in that list. (§ 7611 ["[a] man is presumed to be the natural father of a child if he meets the conditions provided in . . . Chapter 3 (commencing with Section 7570[20] . . ."].)

### b. *Section 7636*

Richard also argues that the trial court was required to give effect to the previous judicial determination that he is Cheyenne's father because, under section 7636, such an adjudication establishes that he is her father "for all purposes," including a finding that he is Cheyenne's presumed father, and the trial court was thus without authority to make a contrary paternity determination with respect to Dennis. Richard's argument, however, is precluded by the holding of *In re E.O.* (2010) 182 Cal.App.4th 722 [107 Cal.Rptr.3d 1].

■ In that case, the appellant argued that his prior "paternity judgment 'required the [trial] court to consider [him] the children's presumed father' " pursuant to *section 7636. (In re E.O., supra,* 182 Cal.App.4th at p. 727.) As here, the case involved a paternity judgment regarding child support and the court's analysis discussed whether such judgment was " 'determinative for all purposes' " under section 7636. (*In re E.O., supra,* 182 Cal.App.4th at p. 727.) The court stated that there was no authority cited "that holds a paternity judgment *by itself* requires that a man be declared a presumed father, and such a ruling would be unwarranted. As we have noted, case law holds that in order to become a presumed father, a man 'must' fall within one of the categories set forth in . . . section 7611. [Citations.] A prior paternity judgment is simply not one of the ways set forth in . . . section 7611 that a man can achieve presumed father status." (*In re E.O., supra,* 182 Cal.App.4th at p. 727, italics added.) Our Supreme Court denied the appellant's petition for review in *In re E.O.* on May 20, 2010.

■ Although Richard argues that *In re E.O.* was wrongly decided, we do not agree. The argument advanced by Richard was expressly rejected by the *In re E.O.* court which found that section 7636 does not automatically require a court to find a man to be a presumed father under section 7611 simply

---

[20] Section 7570 et seq. of chapter 3 of part 2 of division 12 governs the "Establishment of Paternity by Voluntary Declaration."

because he has a prior paternity judgment stating that he has an obligation to pay child support. (*In re E.O., supra*, 182 Cal.App.4th at p. 728.) As noted above, the primary purpose of section 7611 in dependency proceedings is "to facilitate a determination 'whether the alleged father has demonstrated a sufficient commitment to his paternal responsibilities to be afforded rights *not* afforded to natural fathers—the rights to reunification services and custody of the child.' [Citation.]" (*In re A.A., supra*, 114 Cal.App.4th at p. 780, fn. 5.) It is not a redetermination of paternity.

█ Although we hold that the trial court erred as a matter of law in failing to give effect to Richard's 2009 judgment regarding parental obligations and that such judgment did rebut the section 7611, subdivision (d) presumption that Dennis was Cheyenne's presumed father,[21] we also hold that neither the rebuttal of such presumption nor section 7636 necessarily required the trial court to find that Richard is Cheyenne's presumed father under section 7611. Richard must still show that he satisfied at least one of the requirements under section 7611 or that he is a "*Kelsey S.* father"[22] in order to be treated as Cheyenne's presumed father. As we now explain,

---

[21] Dennis could still seek custody of Cheyenne as a nonrelated extended family member under Welfare and Institutions Code, section 362.7. (See Welf. & Inst. Code, §§ 309, 362.7; *Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 108–109 [128 Cal.Rptr.3d 522].) Dennis does not live in California, however, and any placement with him would have to be approved by Nevada, pursuant to the Interstate Compact on Placement of Children. (§ 7900 et seq.) In light of the position taken by Dennis in appeal No. B234964 (*In re Cheyenne B.*), however, this issue would appear to be moot.

[22] The Supreme Court has interpreted the due process requirements of the Fourteenth Amendment to the United States Constitution to require that a trial court find an unwed biological father, who fails to meet the requirements of being a statutorily presumed father under section 7611 but who "promptly comes forward and demonstrates a full commitment to his parental responsibilities," to be unfit as a parent before his parental rights can be terminated. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849 [4 Cal.Rptr.2d 615, 823 P.2d 1216] (*Kelsey S.*).) Under *Kelsey S.*, "[a] court should consider all factors relevant to that determination. The father's conduct both *before and after* the child's birth must be considered. Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate 'a willingness himself to assume full custody of the child—not merely to block adoption by others.' . . . A court should also consider the father's public acknowledgment of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child. [¶] . . . [¶] . . . [T]he trial court must consider whether [the father] has done all that he could reasonably do *under the circumstances*." (*Kelsey S., supra*, 1 Cal.4th at pp. 849–850, citations omitted.) "Although section 7611 makes no provision for a *Kelsey S.* father in its list of presumptions, a father asserting valid *Kelsey S.* rights may effectively qualify for presumed father status as the result of his constitutional right to parent, which overrides any contrary statutory direction." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1023 [72 Cal.Rptr.3d 27].) A "*Kelsey S.* father" is a biological father who satisfies the requirements enumerated above and "is[, thus,] the equivalent of a statutorily presumed father." (*In re M.C.* (2011) 195 Cal.App.4th 197, 222, fn. 13 [123 Cal.Rptr.3d 856].) The trial court did not analyze whether Richard is a presumed father under the requirements in *Kelsey S.* nor did Richard make any such argument.

Richard has failed to demonstrate that he has satisfied any of the requirements to be considered Cheyenne's presumed father.

    3.   *The Trial Court's Ruling That Richard Is Not Cheyenne's*
         *Presumed Father Pursuant to Section 7611, Subdivision (d), Is*
         *Supported by the Record*

Richard's second contention is that there was substantial evidence in the record to support a finding that he is Cheyenne's presumed father under section 7611, subdivision (d). And, he argues, the trial court erred in finding otherwise. Similarly, Richard contends that the trial court's finding that Dennis is Cheyenne's presumed father under section 7611, subdivision (d), was not based on substantial evidence.

As we hold that the trial court erred in finding Dennis to be Cheyenne's presumed father by virtue of the application of section 7612, subdivision (c), we have no reason to consider whether the evidentiary record supports the trial court's ruling with respect to that issue. Instead, our review is limited to whether the record contains evidence sufficient to support the trial court's finding that Richard does *not* meet the requirements of being Cheyenne's presumed father pursuant to section 7611, subdivision (d).[23]

██ To be a presumed father under section 7611, subdivision (d), Richard must show that he (1) received Cheyenne into his home and (2) openly held out Cheyenne as his natural child.[24] Richard argues that the trial court erred in finding that he did not meet the requirement of receiving Cheyenne into his home. We disagree. To satisfy that requirement, Richard had to prove that he had *actually* received her into his home; constructive receipt of a child into his home is insufficient. (*Kelsey S., supra*, 1 Cal.4th at pp. 826, 830.) Although Richard admits that Cheyenne never lived in his home, the law recognizes an alternative means of satisfying the first requirement under section 7611, subdivision (d) by evidence of regular visitation. (See *In re A.A., supra*, 114 Cal.App.4th at p. 784.)

The *In re A.A.* court found that the visitation of the child's biological father in that case was too inconsistent to satisfy the "regular visitation" standard. (*In re A.A., supra*, 114 Cal.App.4th at p. 786.) "[E]ven resolving . . . conflict[s] in favor of [the biological father's] representation that he visited

---

[23] Richard makes no claim that he would be qualified under any other subdivision of section 7611.

[24] It is undisputed that Richard openly held Cheyenne out as his natural child.

the minor 'on a fairly regular basis' (whatever that means) in 1997 after she was born in April of that year, and then visited with her every other weekend from 1998 to May 2001 and last saw her around March 2002, the visits were in other people's homes, not in [his] home. Absent any other reasonable explanation for this (to which we are not made privy), such visitation can be seen as a matter of convenience for [the father]. [Citation.] [In doing so,] [he] could avoid the constant parental-type tasks that come with having the child in his own home—such as feeding and cleaning up after the minor, changing her clothing, bathing her, seeing to her naps, putting her to bed, [etc.]" (*Id.*, at pp. 786–787, fn. omitted.) Finally, the court stated that "even accepting as true [the father's] representation that visitation between himself and the minor stopped because [the mother] ended it, there is no evidence that thereafter he asserted a right to custody or visitation, or even asked his parents (who continued to have visits with the minor) to intercede for him on the issue of visitation. Rather, he just let contact with the minor slide. [Citation.]" (*Id.*, at p. 787.)

Here, Richard's involvement with Cheyenne is similarly inadequate. He was incarcerated when she was born in 1997. While incarcerated he first saw her about a month after her birth and he visited with her only twice. He next saw her at his mother's house nine years later when he was released from prison. She was then already nine years old. Richard testified that Cheyenne stayed at his home only twice. At the hearing, he testified it had been close to a year since he had last seen her. However, he explained that he was a truck driver and occasionally met her at a local Wal-Mart when he drove through the town in which she lived. Although he stated that Summer prevented him from seeing Cheyenne as much as he would have liked, he never asserted his paternity status in court or sought formal custody or visitation rights.

Thus, substantial evidence supports the trial court's finding that Richard's visitation with Cheyenne was not consistent and regular and, as a result, it was not sufficient to satisfy the requirement that he received Cheyenne into his home. Therefore, the trial court did not err in denying his request to be considered her presumed father pursuant to section 7611, subdivision (d).

## *DISPOSITION*

The judgment, to the extent that it finds that Dennis M. is the presumed father of Cheyenne B., is reversed. To the extent that the judgment finds that Richard B. is not a presumed father, it is affirmed. In all other respects, the

judgment is affirmed. This matter is remanded to the family law court for such further proceedings as may be appropriate and consistent with the views expressed in this opinion.

Kitching, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201452.