Filed 7/21/14  In re Riley G. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re RILEY G. and CARSON G., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B253200 (Super. Ct. No. JV51841) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN R.,<br><br>    Defendant and Appellant. | |

John R., the biological father of Riley G. and Carson G., appeals from a child dependency order denying him presumed father status of Carson (age three months) and appeals from the order denying his request to set aside Anthony G.'s voluntary declaration of paternity. (Fam. Code, § 7575, subd. (b)(1).)[1]  Anthony G. is the ex-husband of Carson's mother.  (§ 7575.)  The trial court found that Anthony G. has supported and held the children out as his own, and is their presumed father. (§ 7611,

---

[1] All statutory references are to the Family Code unless otherwise stated.

subd. (a) and (d).)  Appellant, who is a stranger to the children, was denied reunification services and visitation.  We affirm.

*Facts and Procedural History*

Carla G. (mother) and appellant are the biological parents of Carson G. (age three months) and Riley G. (age two).  Riley was born before mother married Anthony G. During the tumultuous marriage, mother had an affair with appellant and conceived Carson.  Carson was born a few months after mother and Anthony dissolved the marriage.

In 2013, mother was arrested four times for public intoxication.  On August 12, 2013,  San Luis Obispo County Department of Social Services (DSS) filed a petition for failure to protect the children (Welf. & Inst. Code, § 300, subd. (b).)  The petition and detention report stated that mother suffered from long term alcohol abuse and domestic violence issues.

Appellant, the children's biological father, was in jail and had an extensive criminal history that included arrests for false imprisonment, making terrorist threats, assault causing great bodily injury, dissuading a witness, domestic battery, vandalism, and violating protective orders.  DSS reported that appellant never developed a relationship with the children, had committed severe acts of domestic violence, and was incarcerated multiple times for violating domestic violence protective orders.

DSS reported that Anthony G., mother's ex-husband, had cared for and provided for Riley and Carson and held them out as his own children.  Anthony G. was present at Riley's birth and listed on Riley's birth certificate as the father.

When Carson was born in 2013, Anthony G. signed a voluntary declaration of paternity.  Anthony G. took care of Carson for a few weeks but had to relinquish care to the maternal aunt because he was working two jobs.  Mother confirmed that Anthony G. was present at the births of Riley and Carson, had cared for and supported the children, and that he held the children out as his own.  Based of DSS's recommendation. the trial court placed the children with Anthony G. and set the matter for a contested jurisdiction.

After paternity tests confirmed that appellant was the biological father of the children, appellant contested paternity. Because Riley was born within 300 days of Anthony G.'s marriage to mother, the trial court found that appellant was the presumed father of Riley. (§ 7611, subd. (a).) The trial court also found that Anthony G. was the presumed father because he held Riley out as his daughter, openly received her into his home, and provided for Riley's care and support. (§7611, subd. (d).)

Appellant requested that the trial court set aside Anthony G.'s voluntary declaration of paternity (VDP) with respect to Carson. Denying the request, the court found that Anthony G. was Carson's presumed father and that the factors listed in section 7573 did not weigh in favor of setting aside the VDP.

At the disposition hearing, appellant requested reunification services and visitation. DSS recommended no visitation because appellant failed to develop a relationship with the children, had never met Carson, and had a history of violent behavior that included threats on Anthony G. on multiple occasions. When mother was pregnant with Riley, appellant beat her and threatened to slit her throat with a box knife. On another occasion, appellant violated a protective order and strangled mother. No contact/stay away orders were to no avail and in place when Carson was conceived. Domestic violence was an on-going issue. In 2013, appellant severely beat and choked his girlfriend who was six months pregnant. Appellant was sentenced to one year jail and incarcerated when Carson was born.

Appellant testified that he was entitled to services because the children are "mine. They're my blood. I've been taken away the chance to see them. I'm working very, very hard right now, and that this was the most time I have stayed out of jail, to see the children." The trial court found that it did not have the discretion to offer reunification services and even if it did, services would not be in the children's best interests. Visitation was denied because it would be detrimental to the children and undermine their placement.

*Motion to Set Aside Voluntary Declaration of Paternity as to Carson*

Appellant argues that the trial court abused it discretion in denying his request to set aside Anthony's voluntary declaration of paternity (VDP). The VDP has the same force and effect as a judgment of paternity (§ 7573) and establishes Anthony's presumed father status. (*Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1138, fn. 8.) Appellant argues that the paternity presumption is rebuttable where the VDP father is not the biological father. (§ 7575, subd. (b)(1).)[2]

The trial court reviewed the factors set forth in the section 7575, subdivision (b) and found that Carson's age (five months) was not a strong factor but that Anthony G. is the only father figure that Carson has known. "In terms of the nature, duration, [and] quality of the relationship . . . , it's clear to me that [Anthony] has held Carson out to be his son, has welcomed him into his home as his son, and has sought to maintain that relationship of parent and child." The trial court found that appellant was aware of mother's pregnancy and did nothing to establish paternity or assume the role of parent. The court noted that Carson and Riley have lived together throughout their lives and have an important bond, Appellant's domestic violence and Riley's fear of appellant was another factor for not setting aside the VDP.

---

[2] Section 7575, subdivision (b)(1) required that the court consider the following factors: "(A) The age of the child. [¶] (B) The length of time since the execution of the voluntary declaration of paternity by the man who signed the voluntary declaration. [¶] (C) The nature, duration, and quality of any relationship between the man who signed the voluntary declaration and the child, including the duration and frequency of any time periods during which the child and the man who signed the voluntary declaration resided in the same household or enjoyed a parent-child relationship. [¶] (D) The request of the man who signed the voluntary declaration that the parent-child relationship continue. [¶] (E) Notice by the biological father of the child that he does not oppose preservation of the relationship between the man who signed the voluntary declaration and the child. [¶] (F) The benefit or detriment to the child in establishing the biological parentage of the child. [¶] (G) Whether the conduct of the man who signed the voluntary declaration has impaired the ability to ascertain the identity of, or get support from, the biological father. [¶] (H) Additional factors deemed by the court to be relevant to its determination of the best interest of the child."

The trial court rejected the argument that appellant was a *Kelsey S.* father. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816.)[3]. Appellant "has done a lot since he's been released from custody to further himself and to make himself available as a father, but until that time, there's no evidence that he was fully committed to be in a role of parent. I have to consider his behavior before Carson's birth as well as the factors that led this court to identify Riley as the child of another person. And the fact that [appellant] was in custody at the time of Carson's birth is a predictable consequence of his own criminal behavior and not a factor that would support a <u>Kelsey S.</u> finding."

On appeal, we are precluded from reweighing the evidence. (*In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1371.) The evidence shows that that it was not in Carson's best interest to set aside the VDP (§ 7575, subd. (b)(1)). Anthony G. cared for Riley and mother during mother's pregnancy with Carson and was present when Carson was born. Anthony G. also signed the VDP and gave Carson his surname. After Carson was born, Anthony G. moved back to live with the children, held Carson out as his own, and financially and emotionally supported the children. The evidence clearly supports the finding that Anthony G. is Carson's and Riley's presumed father. Under the dependency law, there can only be one presumed father. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603.)

### *J. R. v. D. P.*

Citing *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, appellant claims that he qualifies as a presumed father under *Adoption of Kelsey S., supra,* 1 Cal.4th 816. In *J.R. v. D.P., supra,* the biological father (J.R.) tried to assume a parental relationship before and after the child was born but was thwarted by the mother. J.R. brought a paternity action when mother's boyfriend (R.M.) signed a voluntary declaration of paternity. (*Id.*, at p. 381-382.) The trial court set aside the VDP because a DNA test showed that J.R.

---

[3] The term *"Kelsey S."* father applies to a man who is the child's biological father and made a full commitment to fulfill parental responsibility at the earliest possible point but was thwarted from fulfilling that commitment by the other parent or a third party. (*Adoption of Kelsey S., supra,* 1 Cal.4th at p. 849.)

was the biological father and mother lied about R.M. being the only possible father. (*Id.*, at p. 388.) The Court of Appeal affirmed on the ground that the biological father's presumption of paternity, under the facts of the case, " 'is founded on the weightier considerations of policy and logic.' (§7612, subd. (b).) In weighing the conflicting interests, 'the trial court must in the end make a determination which gives the greatest weight to [the child's] well-being.' [Citation.]" (*Id.*, at p. 390.)

Unlike *J.R. v. D.P.,* appellant did not asset his rights until Carson was detained and paternity tests determined appellant was Carson's biological father. Anthony G. is the only father that Carson has known. There is no evidence that appellant made a commitment to fulfill his parental responsibility at the earliest possible point or that he was thwarted from fulfilling that commitment by mother or Anthony. (*Kelsey S., supra,* 1 Cal.4th at p. 849.) The trial court reasonably concluded that appellant was not a *Kelsey S.* father. Anthony's VDP has the same force and effect as a paternity judgment (§ 7573) and rebuts appellant's belated claim that he is Carson's presumed father. "[H]ad appellant successfully demonstrated he was a presumed father under *Kelsey S.,* that fact alone would not have been sufficient to overcome the judgment of paternity represented by the VDP. (Fam. Code, § 7612, subd. (c).)" (*In re William K.* (2008) 161 Cal.App.4th 1, 11.)

*Reunification Services and Visitation*

Appellant's assertion that the trial court erred in denying him services and visitation is equally without merit. As the biological father, appellant is not entitled to reunification services. (§ 361.5, subd. (a); *In re Zacharia D.* (1993) 6 Cal.4th 435, 451.)

With respect to visitation, the trial court may deny visitation where it would be detrimental to the child. (§ 362.1, subd. (a)(1)(B).) Appellant is a stranger to the children and has a history of violent behavior that includes threats on Anthony G. and the mother. Although appellant was in group therapy, he was described as "impulsive" and "incredibly narcissistic" and lacking the ability to make decisions that are in the bests interest of the children. Concerned about the safety of the children and Anthony, the social worker believed that appellant would use visitation to sabotage the children's

6

placement with Anthony.  The trial court did not abuse its discretion in finding that supervised visits would be detrimental to the children and their placement.  (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1357.)

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____


Janette Freeman Cochran, under appointment by the Court of Appeal, for Appellant.


Rita L. Neal, County Counsel, County of San Luis Obispo, Leslie h. Kraut, Deputy County Counsel, for Respondent.