[No. D058816. Fourth Dist., Div. One. Aug. 29, 2011.]

In re P.A., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
ROGER S., Defendant and Appellant;
PATRICIA H., Defendent and Respondent;
ALVARO A., Respondent.

### COUNSEL

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant Roger S.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Respondent Patricia H.

Susan Bookout, under appointment by the Court of Appeal, for Respondent Alvaro A.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Julie Braden, under appointment by the Court of Appeal, for Minor.

### OPINION

McINTYRE, J.—In March 2010, six-year-old P.A. came to the attention of the San Diego County Health and Human Services Agency (Agency) as a result of domestic violence between her mother, Patricia H., and stepfather, Roger S. The juvenile court found Roger was P.A.'s presumed father under Family Code section 7611, subdivision (d). (Statutory references are to the Family Code unless otherwise specified.) When genetic testing showed Alvaro A. was P.A.'s biological father, the court entered a judgment of paternity in his favor, and found that judgment necessarily rebutted Roger's presumed father status. Roger appeals, contending the court erred by entering a judgment of paternity for Alvaro without considering Roger's competing paternity interests under section 7612, subdivision (b). Roger asserts this denied him his due process right to a fair hearing on his paternity status. We conclude that where, as here, a child has both a presumed and a biological father, the court must hold an evidentiary hearing at which it reconciles the competing paternity interests to determine which of those interests are founded on the weightier considerations of policy and logic. Accordingly, we reverse the judgment of paternity in favor of Alvaro and remand the case for a hearing under the standard articulated in section 7612, subdivision (b).

## FACTUAL AND PROCEDURAL BACKGROUND

Patricia came to San Diego from Mexico when she was pregnant with P.A. She met Roger when P.A. was two months old, and married him several months later. Roger provided a home, food and clothing for P.A., and told everyone he was her father. P.A. considered Roger to be her father. The relationship between Patricia and Roger was marred by domestic violence. P.A. told the social worker she did not feel safe when her "dad" was at home because she twice saw him push her mother to the floor.

In March 2010 Agency filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (b), alleging P.A. was at substantial risk of harm as a result of domestic violence between Patricia and Roger. Patricia identified Alvaro as P.A.'s father and said he lived in Mexico City. A parent search was initiated for him. Alvaro was eventually located in Canada, and he requested a paternity test. On a paternity form, he stated he had never lived with P.A., but she had been in his home two times. The court appointed counsel for Alvaro and ordered paternity testing for him. Alvaro said he was not seeking custody of P.A. and was not interested in receiving services from Agency. He intended to return to Mexico.

The court sustained the allegations of the petition, declared P.A. a dependent and placed her with Patricia. The court found Roger was P.A.'s presumed father under section 7611, subdivision (d), but deferred entry of a paternity judgment until proper notice was given to Alvaro so that he could request a hearing "to rebut the presumption or establish his own paternity." The court ordered reunification services for Roger, including supervised visits with P.A.

When genetic tests showed Alvaro was P.A.'s biological father, he requested a judgment of paternity. Patricia and P.A. supported Alvaro's request, noting P.A. was enjoying frequent telephone calls from Alvaro, and she no longer wanted visits with Roger. Roger opposed the request for a paternity judgment in favor of Alvaro and asked for a hearing to allow the court to balance the interests of the two fathers, and ultimately, to have a judgment of paternity entered in Roger's favor. The court, however, found it was unlikely that Roger could disprove Alvaro's biological paternity, and Alvaro's status as P.A.'s biological father entitled him to a judgment of paternity, thereby rebutting Roger's presumed father status. The court entered a judgment of nonpaternity as to Roger, but nevertheless gave Agency discretion to allow Roger to visit P.A. if she wanted visits.

## DISCUSSION

■ The issue presented in this appeal, which implicates the rights of a presumed father and a biological father, is whether the court can use evidence of biological paternity to enter "a judgment establishing paternity" under section 7612, subdivision (c), for the purpose of rebutting the presumption of paternity under section 7611, subdivision (d), without weighing the competing interests of a statutorily presumed father. "The resolution of this issue depends solely on statutory interpretation and is subject to our independent review." (*In re Liam L.* (2000) 84 Cal.App.4th 739, 743 [101 Cal.Rptr.2d 13].) "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155]; see also *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 864 [46 Cal.Rptr.3d 437].)

### A

Before we begin our analysis, we address the issue of mootness raised by Alvaro in his request for judicial notice, which we grant. (Evid. Code, § 452, subd. (d).) According to a March 24, 2011 minute order, the juvenile court placed P.A. with Patricia and terminated its jurisdiction. Although P.A. is no longer a dependent child, the issue on appeal—whether Roger was entitled to a hearing to have the court weigh competing paternity claims—is not moot because Roger's rights were adversely affected by the court's judgment of paternity for Alvaro, which may have consequences for Roger in the future. (See *In re A.R.* (2009) 170 Cal.App.4th 733, 740 [88 Cal.Rptr.3d 448]; *Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 752 [45 Cal.Rptr.2d 333].) Further, "[w]e exercise our discretion to resolve the issues of first impression raised here as matters of continuing public interest that are likely to recur." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 53 [81 Cal.Rptr.3d 918].)

### B

■ There are three types of fathers in juvenile dependency law: presumed, biological, and alleged. (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120 [53 Cal.Rptr.3d 437].) A presumed father is a man who meets one or more specified criteria in section 7611. A biological father is a man whose paternity has been established, but who has not shown he is the child's presumed father. An alleged father (although not relevant here) is a man who has not established biological paternity or presumed father status. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15 [24 Cal.Rptr.2d 751, 862 P.2d 751].) These categories are meant "to distinguish between those fathers who

have entered into some familial relationship with the mother and child and those who have not." (*In re Sabrina H.* (1990) 217 Cal.App.3d 702, 708 [266 Cal.Rptr. 274].)

"Presumed father status ranks highest." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801 [116 Cal.Rptr.2d 123].) "[T]he term 'presumed father' is . . . a term of convenience used to identify a preferred class of fathers by reference to the familial bonds described in section 7611 which the Legislature has determined reasonably approximates the class of fathers it wishes to benefit." (*Id.* at p. 805, fn. omitted.) Only a statutorily presumed father is entitled to appointed counsel, custody (if there is no finding of detriment) and reunification services. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1209 [34 Cal.Rptr.3d 215].) In contrast, a biological father is not entitled to these rights merely because he wants to establish a personal relationship with his child. (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 160 [6 Cal.Rptr.3d 197].) This is because a presumed father, who has lived with a child and treats the child as a son or daughter, has developed a parent-child relationship that should not be lightly dissolved. This type of familial relationship is much more important, at least to the child, than a biological relationship of actual paternity. (*In re Nicholas H.* (2002) 28 Cal.4th 56, 65 [120 Cal.Rptr.2d 146, 46 P.3d 932].) " ' "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." ' " (*In re Christopher M., supra,* at p. 160, quoting *Lehr v. Robertson* (1983) 463 U.S. 248, 260 [77 L.Ed.2d 614, 103 S.Ct. 2985].)

■ A man's status as biological father based on genetic testing does not entitle him to the rights or status of a presumed father. (*In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1026–1027 [128 Cal.Rptr.2d 241].) In determining presumed father status under section 7611, " 'it is irrelevant that the biological father can prove his paternity or even that all parties to the proceedings may concede that [he] is the biological father.' " (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 586 [25 Cal.Rptr.3d 774].) Indeed, courts consistently recognize "the extant father-child relationship is to be preserved at the cost of biological ties." (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 728–729 [118 Cal.Rptr.2d 610].)

## C

■ The Uniform Parentage Act (§ 7600 et seq.) (the Act) establishes the framework by which California courts make paternity determinations. The Act "provides for conclusive and rebuttable presumptions of paternity." (*In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1113–1114 [113 Cal.Rptr.2d 669].) The rebuttable presumptions of paternity are set forth in section 7611 and, as relevant here, include a man who "receives the child into his home and

openly holds out the child as his natural child." (§ 7611, subd. (d).) A presumption under section 7611, subdivision (d), affects "the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a); see *In re Nicholas H., supra,* 28 Cal.4th at p. 70.)

Section 7612, subdivision (b), sets forth the procedures for reconciling competing interests when two or more men claim paternity of a child: "If two or more presumptions arise under [s]ection . . . 7611 that conflict with each other, or *if a presumption under* [s]ection *7611* conflicts with a claim pursuant to [s]ection *7610,* the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (Italics added.) When presented with conflicting claims of paternity under section 7612, subdivision (b), the court must make factual findings as to each claim, and then determine which one is entitled to greater weight. (See *Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 51–52 [22 Cal.Rptr.3d 606]; *Gabriel P. v. Suedi D., supra,* 141 Cal.App.4th at p. 864.) Biological paternity does not necessarily determine which presumption will prevail. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 605–606 [10 Cal.Rptr.3d 205, 85 P.3d 2]; *In re Jerry P., supra,* 95 Cal.App.4th at p. 804 [presumed father status is not rebutted or negated by evidence someone else is biological father].) Instead, a juvenile court confronted with the claim that biological paternity necessarily outweighs another man's presumption of paternity under section 7612, subdivision (b), must weigh all pertinent factors, not just the results of genetic testing. (*In re Jesusa V., supra,* at pp. 607–608.)

D

The evidence here is undisputed that Roger qualified as P.A.'s presumed father. Alvaro does not and cannot claim to be P.A.'s presumed father. Instead, he asserted a parent and child relationship under section 7610, subdivision (b)—"[b]etween a child and the natural father"—thus creating conflicting claims of paternity between a presumed father and a biological father, which require the weighing of "considerations of policy and logic" in order to resolve the conflict. (§ 7612, subd. (b).)

Because P.A. already had a presumed father, the juvenile court should have made factual findings and applied a balancing test to reconcile the competing paternity interests presented here. The court declined to do so, and instead apparently accorded determinative weight to Alvaro's biology, which it found was sufficient to preclude any paternity claim by Roger. This was error. As a matter of statutory construction, had the Legislature intended that evidence of a man's biological paternity would always trump another man's presumed father status, it would not have required the weighing process of section 7612,

subdivision (b). (*In re Jesusa V., supra*, 32 Cal.4th at p. 607.) "[T]he statute did not contemplate a reflexive rule that biological paternity would rebut the section 7611 presumption in all cases, without concern for whether rebuttal was 'appropriate' in the particular circumstances." (*In re Jesusa, supra*, at p. 604.) Thus, the genetic connection between Alvaro and P.A. did not automatically rebut Roger's presumed father status.

E

The respondents in this appeal—Patricia, Alvaro, county counsel and P.A.—cite no authority for the proposition that biological paternity alone is a proper basis for rebutting the presumption of section 7611, subdivision (d), and our research has uncovered none. Instead, the respondents rely on section 7612, subdivision (c), to argue the court was entitled to use evidence of Alvaro's genetic test results to enter a "judgment establishing paternity" for him, which would then rebut Roger's presumption of paternity.

■ Section 7612, subdivision (c), provides that a paternity presumption under section 7611 "is rebutted by a judgment establishing paternity of the child by another man." The plain language of that subdivision refers to a *judgment*, not merely a *finding* regarding biological tests used to determine if a man is the child's natural father. (*In re A.A.* (2003) 114 Cal.App.4th 771, 789 [7 Cal.Rptr.3d 755].) This distinction is critical. In enacting section 7612, subdivision (c), the Legislature established a categorical rule that allows a presumption of fatherhood to be rebutted when a judgment of paternity already exists, thereby preventing the court from determining parentage if it had previously been judicially determined. (See, e.g., *Barkaloff v. Woodward* (1996) 47 Cal.App.4th 393, 399 [55 Cal.Rptr.2d 167] [presumption of paternity was rebutted under § 7612 by prior stipulated judgment of paternity by another man]; *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1141 [95 Cal.Rptr.3d 477] [voluntary declaration of paternity under § 7573 accorded force and effect of a judgment].) Stated another way, a section 7611 presumption is rebutted by a prior judgment because that "judgment acts to preclude the issue of paternity from being *redetermined.*" (*In re A.A., supra*, 114 Cal.App.4th at p. 789, italics added.) Thus, section 7612, subdivision (c), cannot be interpreted to mean "a determination of biological parenthood in favor of one man in a dependency case necessarily defeats another man's section 7611[] presumed father status in that same case." (*In re A.A.*, at p. 789.)

Here, a scientific finding that Alvaro is P.A.'s biological father is not the same as a paternity judgment. There was no prior judgment establishing Alvaro's paternity. "Rather, the determination was made in this very case." (*In re A.A., supra*, 114 Cal.App.4th at p. 789.) Accordingly, the juvenile court

erroneously used a "judgment" that did not yet exist to find Roger's presumed father status was necessarily rebutted. (*Ibid.*)

This court's recent opinion in *In re Levi H.* (2011) 197 Cal.App.4th 1279 [128 Cal.Rptr.3d 814] does not require a different result. In that case, the minor had two presumed fathers: one had signed a voluntary declaration of paternity, and the other qualified under section 7611, subdivision (d). The juvenile court, without weighing the competing presumptions, found the voluntary declaration of paternity rebutted the presumption of paternity of the other man. (*In re Levi H., supra,* at p. 1285.) On appeal, we agreed with the juvenile court, and held because the voluntary declaration of paternity had the same force and effect as a paternity judgment (§ 7573), it rebutted the presumption under section 7611, subdivision (d), as a matter of law without the need to weigh the competing presumptions. (*In re Levi H., supra,* at p. 1290.)

Unlike the father in *Levi H.*, Alvaro presented no judgment of paternity arising from a voluntary declaration of paternity. Consequently, the court could not find Alvaro's biological paternity necessarily rebutted Roger's presumed father status.

■ Contrary to Agency's argument, the court had no "discretion" to use evidence of biology to enter a paternity judgment for Alvaro. In any event, a paternity judgment in favor of Alvaro would merely establish he is P.A.'s biological father, not her presumed father. (*In re E.O.* (2010) 182 Cal.App.4th 722, 727 [107 Cal.Rptr.3d 1].) "A paternity judgment is, as the name implies, a judicial determination that a parent-child relationship exists. It is designed primarily to settle questions of biology and provides the foundation for an order that the father provide financial support." (*Ibid.*) In the context of this dependency proceeding, however, the issue is not one of biology and child support, but rather the right to reunification services and possible custody of a dependent child. Thus, we disagree with the respondents' interpretation of section 7612, subdivision (c), that would allow Alvaro's judgment of paternity to automatically extinguish Roger's rights as a presumed father. Any other result would incorrectly elevate biological status over presumed status, and would contradict well-established law that " 'blood evidence is [not] conclusive of fatherhood in *all* circumstances, [nor does] it automatically eliminate[] *other* presumptions of fatherhood.' " (*In re Jesusa V., supra,* 32 Cal.4th at p. 618.)

F

Section 7612, subdivision (b), required a hearing for the purpose of resolving the conflicting paternity interests of Roger as a presumed father and Alvaro as a biological father. The court failed to make any factual findings or

apply a balancing test. (*In re M.C.* (2011) 195 Cal.App.4th 197, 223 [123 Cal.Rptr.3d 856] [court should have weighed competing presumptions among three presumed parents].) The error was compounded when the court denied Roger a hearing based on the assumption he would be unable to "counter [Alvaro's] biological finding" of a "99.99 percent" likelihood Alvaro was P.A.'s father. Nothing in the statutory scheme required Roger to disprove paternity test results in order to maintain his status as a presumed father. Instead, Roger was entitled to a hearing at which the court weighed all relevant factors, not just Alvaro's status as P.A.'s biological father, in determining which paternity interest was founded on weightier considerations of policy and logic. (§ 7612, subd. (b); *In re Jesusa V., supra*, 32 Cal.4th at p. 608.) Accordingly, the paternity judgment for Alvaro must be reversed and the matter remanded to the juvenile court to resolve the conflicting paternity interests under the standard articulated in section 7612, subdivision (b).

## G

Respondents assert any error was harmless because even had the court weighed the competing paternity claims, it "would have in all likelihood entered a paternity judgment in favor of Alvaro," given that P.A. wants to develop a relationship with him and no longer wants visits with Roger. P.A.'s stated wishes in this regard, however, are not relevant to the legal issue of whether the court was required, in the first instance, to hold a hearing under section 7612, subdivision (b). Moreover, this argument ignores undisputed evidence that Alvaro had no relationship with P.A. before these dependency proceedings began. He saw P.A. only twice since she was born, never supported her, and never made any effort to forge a parent-child bond or even contact her for the first six years of her life. Alvaro is seeking neither custody of P.A. nor services to reunify with her. His commitment to P.A. consists of establishing his biological paternity. As we previously discussed, rights generally given to a father are based not on biology, but on the father's connection to the mother and child, or on the father's commitment to the child. (*In re Zacharia D., supra*, 6 Cal.4th at p. 449.) The Legislature clearly intended to provide biological fathers with "far [fewer] rights than both mothers and presumed fathers have under California's statutory system." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 844 [4 Cal.Rptr.2d 615, 823 P.2d 1216].)

Further, the paternity judgment for Alvaro, based solely on evidence of genetic testing, deprived Roger of the opportunity to present evidence of the nature of the relationship he had with P.A. as the only father she had ever known, and to assert his interests as a presumed father to maintain that relationship. Determining prejudice in this context would require " 'a speculative inquiry into what might have occurred . . .' " because it is impossible to

know what choice the court would have made had it engaged in the proper analysis. (See *In re James F.* (2008) 42 Cal.4th 901, 915 [70 Cal.Rptr.3d 358, 174 P.3d 180], quoting *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 150 [165 L.Ed.2d 409, 126 S.Ct. 2557]; see also *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 760 [89 Cal.Rptr.2d 407] [denial of mother's request for contested selection and implementation hearing was not subject to harmless error analysis].)

■ Although we do not speculate on the outcome of the hearing on remand, we note the juvenile court's exercise of discretion in resolving the conflicting paternity interests will be constrained by "considerations of policy and logic," and in making its decision, the court "must evaluate a number of factors and in the end protect the well-being of the child." (*Craig L. v. Sandy S., supra,* 125 Cal.App.4th at p. 43.) No single factor—whether social or biological—controls resolution of the conflict between these competing fathers. (*Id.* at p. 52, citing *In re Jesusa V., supra,* 32 Cal.4th at p. 608.) Manifestly, the court may conduct the hearing and make its findings and order "in view of circumstances as they have developed since the parentage determination was made in [December] 2010." (*In re M.C., supra,* 195 Cal.App.4th at p. 223.)

## DISPOSITION

The judgment is reversed and the matter is remanded to the juvenile court for a hearing to resolve the competing paternity interests as required by section 7612, subdivision (b).

McDonald, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied September 22, 2011.