Filed 11/4/13  In re Maya C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MAYA C., a Person Coming Under the Juvenile Court Law. | |
| | D063935 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13821A) |
| v. | |
| MARTIN D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Maryann M. Milcetic, under appointment by the Court of Appeal, for Minor.

Martin D. appeals the juvenile court's order denying his request for paternity testing in the dependency case of child Maya C. Martin contends the court erred as a matter of law by denying the request.[1] We affirm.

## THE FIRST DEPENDENCY

In January 2008, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of one-year-old Maya. The petition was based on heroin use by her mother, S.C., and S.C.'s boyfriend, alleged father Donnie M. Maya was detained at Polinsky Children's Center and then with maternal aunt Sandra P.

Maya's birth certificate did not list a father. In her parentage questionnaire, S.C. declared under penalty of perjury that Donnie was Maya's biological father. Donnie confirmed this. In May 2008, the juvenile court found that Donnie was Maya's presumed father (Fam. Code, § 7611, subd. (d)).[2] At the same time, the court entered a judgment of parentage which stated "Donnie M[.] is declared to be the presumed father of . . . Maya C[.]"

The court entered a true finding on the petition, ordered Maya placed with a relative and ordered reunification services for S.C. and Donnie. In September 2008, the

---

[1]    Maya's former trial counsel opposed testing. Her current trial counsel and her appellate counsel support testing.

[2]    Family Code section 7611 states: "A man is presumed to be the natural father of a child if . . . [¶] . . . [¶] (d) [h]e receives the child into his home and openly holds out the child as his natural child." (*Id*., subd. (d).)
    There has never been any paternity testing or any finding of biological paternity.

2

court terminated Donnie's reunification services. In March 2009, Maya began a trial visit with S.C. In August, the court entered a judgment awarding S.C. sole legal and physical custody of Maya, naming Donnie as the father and terminating dependency jurisdiction.

## THE SECOND DEPENDENCY

In September 2012, when Maya was nearly six years old, S.C. was arrested for selling drugs and child endangerment. S.C.'s live in boyfriend, Jesus M., was also arrested. S.C. was pregnant with Jesus's child with a due date in January 2013. Maya called Jesus "dad."

On the day of her arrest, S.C. stated, for the first time, that Martin was Maya's father. She also said he had never met Maya. Several days later, in a parentage questionnaire, S.C. declared under penalty of perjury that Martin was the biological father. She further declared that when she told him he was Maya's father, "he denied it and stopped talking to me" in February 2006.

The Agency filed a dependency petition based on S.C.'s drug use and failure to protect by Maya's "father." The petition named Donnie as the presumed father and Martin as the biological father. Both Martin and Donnie were in prison. Donnie had a release date of September 2013.

At the detention hearing, the court amended the petition to reflect that Martin was an alleged father. The court appointed counsel for Martin as an alleged father and for Donnie as the presumed father. Maya was detained in a foster home.[3]

In October 2012, Martin waived his right to appear at the jurisdictional hearing. In November, he was released from prison. In December, he was served with the petition and contacted the social worker. Martin told the social worker "that he had received some kind of notice while he was in prison but he knew that he would be getting out and decided to wait until then to respond." Martin also said that "S.C. was seeing both Donnie and I" and she "always said Maya could be mine or another guy's baby."[4] According to Martin, when he was in jail in 2010, S.C. asked him to submit to a paternity test, but he went to prison before testing. S.C. then wrote to him that he "should be getting paperwork," but he "never heard from her again." Martin told the social worker that he wanted a paternity test to determine whether he was Maya's father; if he was, he wished her to be placed with his family. Martin's two sisters and his parents were all willing to have placement. When the social worker said that Maya and her sister shared a close bond and should stay together, Martin replied that he was not sure whether his family would also be willing to care for the sister.

---

[3]    S.C. had given birth to another child, X.C., in February 2009. X.C. was also detained but is not a subject of this appeal. Maya and X.C. were detained and placed together throughout this case.

[4]    Donnie reported that "he and another guy were with S.C. at the same time" and he did not know whether he was Maya's father.

Donnie told the social worker that he did not know whether he was Maya's father. Donnie said that he visited Maya when he was not incarcerated, and he had lived with her for "short periods of time, approximately two years, on and off."

In January 2013, Martin completed a paternity questionnaire in which he declared: "I think it's very possible I am the father." Martin's counsel requested paternity testing and stated that Martin wished to have visitation if he turned out to be the father. The court denied the request for testing without prejudice, citing the May 2008 judgment. Martin's counsel said she anticipated filing a motion to set aside the judgment. At the next hearing, Martin's counsel requested a continuance of the jurisdictional and dispositional hearing so that she could file a Welfare and Institutions Code section 388 petition to set aside the judgment. The court denied the request. The court entered a true finding on the petition, ordered Maya placed in foster care, gave the Agency discretion to place her with a relative and ordered reunification services for S.C. In February, Maya was moved to Sandra's home.

In March 2013, Martin filed a Statement Regarding Parentage (form JV-505), in which he requested paternity testing, and supporting points and authorities. In the statement regarding parentage, Martin checked a box next to the statement "I do not know if I am the parent of the child . . . ." At a hearing the next day, the court denied the request for testing without prejudice, stating "Again, there is a 2008 judgment of paternity, and I believe the proper remedy is to directly attack that judgment rather than collaterally attack it."

5

DISCUSSION

"Family Code section 7636 provides a paternity judgment 'is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code.' [¶] The existence of a valid paternity judgment bars the use of blood test evidence in a subsequent proceeding to overturn a paternity determination. [Citation.] [¶] In other words, for [the appellant's] paternity testing request to go forward, he had to succeed in setting aside the existing paternity judgment." (*In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1296; see also *In re P.A.* (2011) 198 Cal.App.4th 974, 982-983.) Setting aside the judgment requires a showing of extrinsic fraud, mistake or accident. (*In re Margarita D.,* at pp. 1294-1296.)

In 2008, the juvenile court entered a judgment that Donnie was Maya's presumed father. That judgment is determinative here and may not be overturned by paternity test results. In order for Martin to prevail in his request for paternity testing, he was required first to succeed in a motion to set aside the judgment. He never moved to set aside the judgment.

The authorities on which Martin relies are inapposite. For example, *In re J.H.* (2011) 198 Cal.App.4th 635 is legally distinguishable in that there was no prior parentage judgment and factually distinguishable in that the appellant had a relationship with the child (*id*. at p. 650). In *In re B.C.* (2012) 205 Cal.App.4th 1306, there was no prior judgment and no evidence that the mother ever told the appellant he might be a father.

DISPOSITION

The order is affirmed.

6

                                                    BENKE, Acting P. J.

WE CONCUR:


NARES, J.


HALLER, J.


7