Filed 8/6/14  In re Mia G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re MIA G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B251942 (Super. Ct. No. J1435738, J1435739) (Santa Barbara County) ORDER MODIFING OPINION AND DENYING REHEARING [No Change in Judgment] |
| CHILD PROTECTION SERVICES, Plaintiff and Respondent, v. KYLE H., Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on July16, 2014, be modified as follows:

1.  On page 2, line 6 of the paragraph 5, delete the name "Carl" and insert the word "appellant," the sentence will then read:

In October 2012, appellant was arrested . . . .

2.  On page 3, line 5 of the first full paragraph delete the word "appellant" and insert the name "Kylie" so the sentence will then read:  ". . . while Kylie slept through the incident."

3. On page 5, delete the first sentence immediately following the caption "*Judgment of Paternice . . ."* and insert in its place the following:

Appellant claims that the recitals in his statement regarding paternity supports the finding that he is a presumed father which creates a presumption of parentage. (See § 7611, subd. (d).)

4. On page 6, line one of the first full paragraph, delete the words "declaration of" and insert in their place the words statement regarding so the sentence will then read:

We reject the argument that appellant's statement regarding parentage . . .

There is no change in the judgment.

The petitions for rehearing are denied.

Filed 7/16/14 (unmodified version)
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| In re MIA G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B251942 (Super. Ct. No. J1435738, J1435739) (Santa Barbara County) |
| CHILD PROTECTION SERVICES, Plaintiff and Respondent, v. KYLE H., Defendant and Appellant. | |

Here the natural father of 10-year-old Mia G. and Mia's stepfather vie for presumed father status based on competing paternity presumptions in a dependency proceeding. (Fam. Code, §§ 7611, subd. (d); 7612, subd. (d).)[1] "Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, 'there can only be one presumed father.' [Citations.] How those competing presumptions are to be reconciled is set forth in section 7612 . . . ." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603.)

---

[1] All statutory references are to the Family Code unless otherwise stated.

Appellant Kyle H., Mia's stepfather, appeals the denial of his request for presumed father status (§ 7611, subd. (d)). Mia's natural father, Carl K., lives in Hawaii and separated from Mia's mother before Mia was born. In 2004, a judgment of paternity for child support was entered against Carl by a Hawaii court.

After Mia moved to California, a dependency action was filed in 2013 when mother severely beat Mia. At the jurisdiction/disposition hearing, Appellant and Carl each claimed presumed father status. The trial court found that the Hawaii judgment for child support was a judgment of paternity within the meaning of section 7612, subdivision (c) [now subdivision (d)] and rebutted any statutory presumption of paternity that appellant claimed under section 7611, subdivision (d). We affirm. (*In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1376-1377.)

*Facts and Procedural History*

Alicia G. (mother) and Carl are the biological parents of Mia who was born in Hawaii in 2003. Carl is listed as the father on Mia's birth certificate.

After Mia was born, mother agreed that Carl could visit Mia, which he did regularly. Carl started out with supervised visits, and as Mia got older, the visits were unsupervised and included overnight and weekend visits at Carl's home. On September 24, 2004, the Family Court of Hawaii entered a judgment of paternity against Carl and ordered child support and supervised visits.

In 2006 mother, Mia, and the maternal grandparents moved to Santa Maria. Mother married appellant. They had a child together, Kylie, born in 2009. After Kylie was born, appellant became physically abusive and sexually assaulted mother when mother discovered that appellant was addicted to online pornography. Mother tried to protect the children and gave Mia a cell phone to call the police if there was fighting. In October 2012, Carl was arrested for assault of mother with a deadly weapon. Mother divorced appellant in April 2013, about the same time appellant violated a no-contact order and was arrested for sexual assault.

Carl, who lives in Hawaii, remained in contact with Mia and was told there were no family problems. Carl was under the impression that Mia was in a

2

healthy, happy home with mother and her new husband. Carl "didn't want to interfere with that or confuse Mia at such an early age. . . . I wanted to do what was best for Mia." Carl left it up to mother to decide what level of interaction he had with Mia.

Mother, however, suffered from substance abuse, mental health, and domestic violence issues. In 2013 Santa Barbara County Child Welfare Services (CWS) placed Mia and her half-sister Kylie in protective custody after mother severely beat Mia. CWS reported that mother hit Mia approximately 50 times over a one hour period while appellant slept through the incident. On June 18, 2013, CWS filed petitions for serious physical harm (§ 300, subd. (a)), failure to protect (§ 300, subd. (b)), serious emotional damage (§ 300, subd. (c)), no provision for support (§ 300, subd. (g)), and sibling abuse (§ 300, subd (j)). The detention report stated that appellant was incarcerated for domestic violence, was unable to protect or care for Mia, and that his criminal history placed Mia and her half-sister, Kylie, at risk of harm or injury.

Before the jurisdiction/disposition hearing, appellant filed a Statement Regarding Parentage (JV-505) alleging that he had lived with Mia and held her out as his daughter. Carl filed his own Statement Regarding Paternity for presumed father status based on the 2004 judgment of paternity and testimony that he held Mia out as his daughter, received her into his home, and paid for Mia's support before she moved to California.

The trial court sustained the petitions, found that the Hawaii judgment of paternity rebutted any statutory presumption of paternity that appellant was entitled to, and found that Carl was Mia's presumed father. Although CWS recommended that services be bypassed for mother (Welf. & Inst. Code, § 361.5), the trial court ordered reunification services and supervised visits for Carl and mother. The court ordered that mother's case plan include drug counseling and a psychological evaluation.[2]

---

[2] Mother appealed from the disposition order but abandoned the appeal. (2519421.) We dismissed the appeal on May 20, 2014. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844-845.)

Appellant and mother were granted reunification services and visitation with respect to Kylie, Mia's half-sister. Appellant's case plan included individual counseling on domestic violence and single parenting issues, parenting education, and substance abuse services with random drug testing.

### Presumed Father Status

Although the dependency law uses the terms "presumed father," "natural father," "de facto father," and "alleged father," these terms are based on the parenting relationship between the man and the child rather than a biological relationship. (*In re Jerry P.*(2002) 95 Cal.App.4th 793, 801-802.) "Presumed father status ranks highest. Only a 'statutorily presumed father' is entitled to reunification services under Welfare and Institutions Code section 361.5, subdivision (a) and custody of his child under Welfare and Institutions Code section 361.2." (*Id.*, at p. 801.)

"To identify fathers who, by reason of their parenting relationship, are entitled to seek reunification services and custody the Legislature borrowed the categories of men who are "presumed to be the natural father[s]" of children under Family Code section 7611, hence the term 'presumed father.' Section 7611 sets out a number of ways a father can obtain 'presumed father' status." (*In re Jerry P., supra,* 95 Cal.App.4th at p. 802, fns. omitted.) One way is section 7611, subdivision (d) which provides that a man is presumed to be the natural father of a child if "[h]e receives the child into his home and openly holds out the child as his natural child." It is a rebuttable presumption. (*In re Jesusa V.,* supra, 32 Cal.4th at pp. 603–604.) Section 7612, subdivision (d) provides that "a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another man."

### Conflicting Paternity Presumptions

Appellant claims that he is the presumed father because he took Mia into his home and held her out as his natural child. (§ 7611, subd. (d).) Citing *In re Cheyenne B., supra,* 203 Cal.App.4th 1361, the trial court correctly found that Carl's judgment of paternity defeats any statutory presumption of paternity that appellant might be entitled to.

In *In re Cheyenne B.*, *supra,* the Los Angeles County Child Support Services obtained a judgment of paternity against the biological father (Richard) for Cheyenne's support. (*Id.*, at p. 1368, fn. 13.) After a dependency action was filed, another man (Dennis) requested presumed father status because he had lived with and cared for Cheyenne and held her out as his own child. (§7611, subd. (d).) The Court of Appeal held that the judgment for child support was a "paternity judgment" within the meaning of section 7612, subdivision (c) [now subdivision (d)] and rebutted Dennis' presumption of paternity. (*Id.*, at p. 1376.) The court stated that a paternity judgment, standing alone, does not entitle a man to presumed father status. (*Ibid*.) The man who holds a judgment of paternity must also show that he promptly came forward and demonstrated a full commitment to paternal responsibilities -- emotional, financial, and otherwise. (*Ibid*.) "In our view, requiring a man who holds a judgment of paternity to also satisfy the requirements necessary to be considered a presumed father, with its attendant rights and obligations, does not constitute a redetermination of paternity. Instead, it is a determination of the extent, nature and quality of his relationship with the child at issue." (*Ibid*.)

Although the Hawaii judgment is dispositive of paternity, Carl also obtained presumed father status based on Mia's visits and overnight stays at his home. (*In re Cheyenne B.* 203 Cal.App.4th at p. 1379; *In re A.A.* (2003) 114 Cal.App.4th 771, 786.) The evidence shows that Carl demonstrated a full commitment to his parental responsibilities when Mia lived in Hawaii. The trial court correctly found that Carl did not lose his presumed father status by failing to visit or support Mia after she moved to California. (*In re J.O.* (2009) 178 Cal.App.4th 139, 149.)

*Judgment of Paternity Trumps the Section 7611 Paternity Presumption*

Appellant claims that his voluntary declaration of paternity has the same force and effect as a judgment of paternity. (§ 7573.) Section 7612, subdivision (d), however, precludes serial redeterminations of parentage. Doing so is not conducive to the stability of a child, nor does it foster the stability of judgments. (See *De Weese v. Unick* (1980) 102 Cal.App.3d 100, 105 [discussing doctrine of res judicata].) Section

7612, subdivision (d) is plain and clear. A judgment of paternity conclusively rebuts a section 7611, subdivision (d) presumption of paternity. The Legislature has provided that a judgment determining the existence of a parent and child relationship "is determinative for all purposes . . . ." (§ 7636.) Because of the 2004 Hawaii judgment, the trial court was precluded from making a new parentage determination. (Welf. & Inst. Code, § 903.41, subd. (b)(1)&(2); *In re Cheyenne B., supra,* 203 Cal.App.4th at p. 1373; *In re P.A.* (2011) 198 Cal.App.4th 974, 982; *In re A.A., supra,* 114 Cal.App.4th at p. 789.)

We reject the argument that appellant's declaration of parentage extinguished Carl's presumed father status or required that the trial court conduct a hearing to determine which paternity interest is "founded on the weightier considerations of policy and logic . . . ." (§7612, subd. (b).)[3] Carl is an adjudicated father by virtue of the 2004 paternity judgment and the judgment rebuts any section 7611 paternity presumption appellant claims. (§ 7612, subd. (d); Cal. Juvenile Dependency Practice (Cont. Ed. Bar 2013) § 11.39, p. 1002; *Barkaloff v. Woodward* (1996) 47 Cal.App.4th 393, 399.) Section 7612, subdivision (b), which directs a trial court to weigh competing paternity claims, only applies when two or more paternity presumptions arise under section 7610 or 7611 and conflict with each other. (*In re A.A., supra,* 114 Cal.App.4th at p. 781.) There are no competing paternity presumptions because the Hawaii judgment conclusively rebuts any statutory presumption of paternity that appellant could claim. In the words of the trial court, "[w]e can't determine paternity if it's already been determined."

*In re Brianna M.*

Citing *In re Brianna M.* (2013) 220 Cal.App.4th 1025, appellant argues that section 7612, subdivision (d) is inapplicable to dependency cases and only relates

---

[3] Section 7612, subdivision (b) states in pertinent part: "If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, . . . the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

to biological paternity for purposes of child support.  There, the court concluded that "[b]iological paternity is irrelevant to 'presumed father' status in a dependency action . . . ."  (*Id.*, at p. 1030.)  The court reasoned that presumptive fatherhood has an entirely different meaning in the dependency context than it does in the paternity context.  "[T]here is no suggestion in the dependency statutes that the Legislature intended to grant preferred status in a dependency action to a man who completed a voluntary declaration of paternity, but has not otherwise established a relationship with his child."  (*Id.*, at p. 1049.)  Petition for review was granted on February 11, 2014 (S214955) and the case is no longer citable authority.  (Cal. Rules of Court, rules 8.1105, subd. (e)(1), 8.1115, subd. (a).)

We believe that a section 7611 presumption of paternity is rebutted by a judgment establishing another man's parentage. (See *In re Cheyenne B., supra,* 203 Cal.App.4th at p. 1376 [judgment of paternity rebuts section 7611 paternity presumptionl]; *In re Levi H.*  (2011) 197 Cal.App.4th 1279, 1290 [voluntary declaration of paternity extinguishes section 7611 paternity presumption]; *In re P.A., supra,* 198 Cal.App.4th at p. 982 [judgment of paternity defeats section 7611 presumed father status].)  " 'In enacting section 7612, subdivision (c) [now subdivision (d)], the Legislature established a categorical rule that allows a presumption of fatherhood to be rebutted when a judgment of paternity already exists, thereby preventing the court from determining parentage if it had previously been judicially determined.  [Citations.]  Stated another way, a section 7611 [] presumption is rebutted by a prior judgment because that 'judgment acts to preclude the issue of paternity from being *redetermined*.'  [Citation.]" (*In re Cheyenne B., supra* 32 Cal.4th  at p. 1373, quoting  *In re P.A., supra,* 198 Cal.App.4th at p. 982.)

*Mia's Wishes*

Appellant argues that Mia does not want to live with Carl or visit him in Hawaii.  Mia told the case worker that her family is in Santa Maria where her maternal grandparents and appellant live and "I don't know anyone in Hawaii."  As a nine year old, Mia does not get to decide who is her father.  The purpose of the dependency law

7

is to reunify families and ensure the safety, protection, and physical and emotional well-being of the child. (Welf. & Inst. Code, § 300.2.)

Carl is a nonoffending, noncustodial parent who immediately came forward upon learning that Mia had been exposed to domestic violence. Carl acknowledged Mia's desire to stay in California and was willing to allow this until he learned that Mia would be exposed to appellant who had sexually abused Mia's mother.

As Mia's presumed father, Carl is presumptively entitled to reunification services and custody unless the trial court finds that placement with Carl would be detrimental to Mia. (§ 361.2, subd. (a).) The fact that Mia does not know Carl well is an issue to be addressed in the reunification process. The trial court correctly found that appellant is a de facto parent and not entitled to reunification services. De facto parents have no right to reunification services. (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 752.) "The same is true of stepparents." (*Ibid*.)

The judgment (order granting Carl presumed father status and reunification services) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

8

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Lisa A. Raneri, under appointment by the Court of Appeal, for Kyle H., Appellant.

Michael C. Ghizzone, County Counsel, County of Santa Barbara, Toni Lorien, Sr. Deputy, for Child Welfare Services.

Darlene Azevedo Kelly, under appointment by the Courtof Appeal, for Carl K., Respondent.