Filed 6/8/15  In re A.G. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | B258769 (Los Angeles County Super. Ct. No. CK77034) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DANIEL C., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven Klaif, Juvenile Court Referee.  Affirmed.

Robert R. Walmsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Daniel C., biological father of dependent child A.G., appeals a judgment denying him reunification services and declaring another man to be A.G.'s presumed father. Appellant has been incarcerated all of A.G.'s life, and has no relationship with her. On appeal, appellant argues that the court should have continued the hearing to determine presumed father status. (Welf. & Inst. Code, § 352.) We affirm.

## FACTS

Appellant, who has a lengthy criminal record, was arrested before A.G.'s birth in 2006, received a nine-year sentence for carjacking, and never saw or provided for A.G. while incarcerated. In 2009, A.G. became a dependent of the juvenile court because her mother Eileen G. (Mother) used methamphetamine; was unable to look after A.G.; and failed to make arrangements for A.G.'s care. The court sustained allegations against appellant, who failed to provide A.G. with the necessities of life. He was denied reunification services. After completing court-ordered services, including a drug rehabilitation program, Mother regained custody of A.G.

In March 2014, the Department of Children and Family Services (DCFS) intervened when Mother, while incarcerated, failed to make appropriate plans for A.G.'s care. Mother was using methamphetamines and could not provide a home for her children. Owing to Mother's homelessness, seven-year-old A.G. had not attended school since September 2013. Mother was released from jail to a residential substance abuse rehabilitation center. DCFS filed a dependency petition in April 2014.

Genetic testing shows that appellant is A.G.'s biological father. He was not present at the child's birth; did not sign the birth certificate; did not live with Mother at conception or birth; and did not support A.G. financially or have a relationship with her. The court declared appellant to be A.G.'s biological father, and found a prima facie case for detention. A.G. was released to Mother, on condition that Mother remain in a rehabilitation program and undergo random weekly drug tests.

A first amended petition alleged a risk of harm to A.G. and her siblings due to Mother's continued drug use and drug-related convictions, despite completing a drug rehabilitation program during the prior dependency case. The amended petition made no

2

claims regarding appellant, but alleges that Juan R., the parent of A.G.'s two younger siblings, uses illicit drugs and is unable to care for his children while incarcerated.

In a taped interview, A.G. identified Juan R. as her dad. She knows that Mother and Juan R. use drugs together in the bathroom, causing A.G. to feel "a little bit" scared, and she once found drugs in Mother's purse. A.G. does not fear Mother or Juan R., and expressed a desire to live with "my mom and dad," referring to Juan R. A.G. stated that she is not attending school.

Mother began using "weed and alcohol" when she was 13 or 14 years old, started methamphetamine when she was 16, and was "a regular user" by age 19. She met Juan R. because they did drugs together. During the prior dependency proceeding, they complied with the case plan until it ended in 2012. The family moved into a homeless shelter but were "kicked out" because Juan R. caused problems. Juan R. began using drugs again, and Mother moved into a domestic violence shelter. She relapsed in 2013, and used methamphetamine daily until arrested. She acknowledged that drugs affect her parenting: she does not pay attention to the children or interact with them when she is high. She hopes to reunite with Juan R. when he is released and regains sobriety. She has not had contact with appellant for seven years.

Appellant expected to be released from incarceration in 2015. He is willing to take any steps necessary to gain custody of A.G., and does not want the court to terminate his parental rights. He has a 16-year-old daughter from another relationship, but has no contact with her or his own parents. Appellant did not verify that he enrolled in programs to alleviate his problems, and did not demonstrate any ability to provide A.G. with food, clothing, shelter or other necessities, or meet her emotional and physical needs. He has never visited A.G. because he has been incarcerated.

Juan R. wrote a letter describing himself as the father of A.G. and her younger siblings. He expected to be released from prison in December 2014. He is unwilling to relinquish parental rights, and wants the children to live with Mother while she is treated for drug addiction. Juan R.'s lengthy criminal record includes felony convictions.

A second amended petition added allegations that appellant failed to provide A.G. with the necessities of life. At a jurisdiction hearing on July 17, 2014, the court sustained allegations against Mother and Juan R., after Mother pleaded no contest. Juan R. reiterated that he considers A.G. to be his daughter. The court continued the hearing to determine presumed father status, and counsel was directed to confer with appellant.

Appellant attended the hearing on August 18, 2014, but did not testify. Through counsel, he acknowledged paternity while conceding that he has been incarcerated since A.G. was born. He attempted to write letters to A.G., and told family and friends that she is his daughter. He is out of prison. In response, Juan R. testified that he has raised A.G. as his daughter since she was one and a half years old. They have lived together continuously, along with her half siblings (Juan R.'s biological children), except when he was incarcerated. Juan R. refers to her as his daughter, and A.G. calls him dad; she considers Juan R.'s parents to be her grandparents. He transported her to school and treats her like his offspring. Juan R. was incarcerated for drug possession.

Counsel for DCFS, Juan R. and A.G. asked that Juan R. be declared A.G.'s presumed father. Over appellant's objections, the court declared Juan R. a presumed father. It found that Juan R. "has fulfilled that role throughout much of the child's life as compared to the biological father who has minimal if any involvement in the child's life."

The court was unsure whether it could adjudicate the petition against appellant, as a biological, but not presumed, father. Appellant's counsel asked for a continuance to brief the issue, and also to show that appellant may have financially provided for A.G. by having his prison wages garnished. The court decided to adjudicate the allegations and denied a continuance, observing that if appellant's attorney found some legal authority prohibiting adjudication, he could ask the court to vacate the order. Absent proof that appellant contributed financially to A.G.'s support, the court sustained allegations that appellant failed to provide A.G. with the necessities of life, placing her at risk of harm.

Moving to disposition, the court denied appellant's request for reunification services, reasoning that appellant's rights as biological father "were basically trumped by" Juan R.'s status as presumed father. The court declared A.G. and her siblings to be

4

dependents of the court, leaving them in Mother's care under DCFS supervision. Juan R. was given monitored visits. The court determined that appellant was not entitled to visitation because A.G. does not know him. The court ordered counseling for A.G. and, if allowed by her therapist, monitored visits for appellant. Appellant timely appeals from the disposition.

## DISCUSSION

Appellant argues that the juvenile court improperly denied a continuance. Written notice "shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." Continuance may be granted "only upon a showing of good cause," unless it would be contrary to the child's interests. (Welf. & Inst. Code, § 352, subd. (a).) Legislative policy discourages continuances. (*In re Elijah V*. (2005) 127 Cal.App.4th 576, 585.) A continuance of the jurisdiction hearing is "difficult to obtain" because petitions must "be heard and decided rapidly." (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.)

The denial of a continuance is reviewed for an abuse of discretion. (*In re J.I.* (2003) 108 Cal.App.4th 903, 912 [counsel's inability to talk with an absent parent was not good cause for a continuance].) A request for a continuance made during closing argument at the jurisdiction hearing may be summarily denied as untimely. (*In re Giovanni F*. (2010) 184 Cal.App.4th 594, 605.)

Appellant "implies the court deprived him of the opportunity to establish himself as a presumed father . . . by denying his counsel's request for a continuance." (*In re Elijah V*., *supra*, 127 Cal.App.4th at p. 585.) When a father is aware of the jurisdiction and disposition hearing, yet chooses not to testify at it, the court does not abuse its discretion by denying a continuance on the issue of presumed fatherhood. (*Ibid.*)

The jurisdiction hearing began on July 17, 2014, when the court adjudicated the petition as to Mother and Juan R. Counsel for appellant was present. The hearing was continued to August 18, 2014, for the express purpose of giving appellant notice and

5

allowing him to present evidence on the issue of presumed father status. Appointed counsel was directed to contact appellant and "inquire as to paternity."

Appellant submitted a "Statement Regarding Parentage" form that did *not* indicate a prior court judgment of parentage or a declaration of paternity. When appellant appeared in court, he sought to delay disposition, ostensibly to show that his prison wages were garnished to support A.G. He made no showing why documentary evidence was not secured before the hearing, nor did he ask to take the witness stand and testify about his financial support of A.G. Appellant did not argue that a continuance would be in A.G.'s best interest—the sole focus was on his personal interest. Appellant's claim that he should have been able to present more evidence on parental status does not attain constitutional dimensions. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 601-602.)

In a dependency proceeding, presumed fatherhood denotes someone who promptly comes forward and demonstrates a commitment to paternal responsibilities. (*In re A.A.* (2003) 114 Cal.App.4th 771, 779.) "A man's status as biological father based on genetic testing does not entitle him to the rights or status of a presumed father," so it is irrelevant that appellant can prove paternity. (*In re P.A.* (2011) 198 Cal.App.4th 974, 980.) Far more important is an "extant father-child relationship [that] is to be preserved at the cost of biological ties." (*In re Nicholas H.* (2002) 28 Cal.4th 56, 65.) For a child over the age of two, "'""""the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be lightly dissolved . . . . This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . .""""" (*Ibid.*; *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 121.)

The evidence shows that Juan R. has lived with A.G. since she was one and half. He holds her out as his daughter, and refers to her as such. He treats her the same as his biological sons, who are A.G.'s half siblings. A.G. spontaneously called Juan R. "my dad" during a taped interview with DCFS, and expressed her desire to live with "my

6

mom and dad," referring to Juan R.  After six years together, A.G. and Juan R. had a father-daughter, familial relationship.

To counterbalance the paternal claims of Juan R., appellant would have to show that he made "'a full commitment to his parental responsibilities—emotional, financial, and otherwise,'" by paying for pregnancy and birth expenses, public acknowledgement of paternity, and prompt action to obtain custody.  (*In re Elijah V.*, *supra*, 127 Cal.App.4th at p. 583, quoting *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849.)  For example, a biological father cannot claim presumed father status by sending the mother diapers and $300; by living with the child only two weeks; by acting a babysitter, rather than a parent; and most critically, by not expressing willingness and ability to take full custody of the child.  (*Elijah V.*, at p. 583.)

Appellant has never lived with A.G.  Indeed, they have never met.  There is no evidence that A.G. knows of appellant's existence, let alone evidence that she considers him to be her father.  Through counsel, A.G. voiced her wish that Juan R. be deemed her father.  Bringing a seven-year-old to court to inquire whether she wants a familial relationship with a stranger would be traumatic for the child.

Under the circumstances, denial of a continuance was harmless error.  Even if evidence were to be produced that support for A.G. was garnished from appellant's wages in prison, his involuntary payments would not demonstrate a paternal commitment to A.G.  None of the other relevant factors are present, and at the jurisdiction hearing appellant did not voice willingness or ability to take full custody of A.G.  In resolving conflicting paternity interests, the court must protect the well-being of the child.  (*In re P.A.*, *supra*, 198 Cal.App.4th at p. 985.)

The court reasonably found that Juan R., not appellant, is A.G.'s presumed father.  The court left open the possibility that A.G. could begin a relationship with appellant, if approved by her therapist.  While nothing prevents appellant from seeking a modification from the juvenile court if he locates a document proving paternity, a judgment of paternity that forms the foundation for a financial support order will not confer presumed father status without corresponding proof of a parental relationship.  (*In re E.O.* (2010)

7

182 Cal.App.4th 722, 727-728 [no presumed father status for a man who barely knew his daughters, even if a DNA test showed he is their biological parent and he previously was adjudged their parent for purposes of determining his child support obligation].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.